UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| CLIFFORD JEFFERSON EL BEY, | ) | |
|---|---|---|
| | ) | Civil Action No: |
| *Plaintiff,* | ) | 15-cv-2537 (PGS)(LHG) |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| ROBERT WOOD JOHNSON UNIVERSITY | ) | AND |
| HOSPITAL, *et al.*, | ) | ORDER |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

This matter comes before the Court on Plaintiff Clifford Jefferson El Bey's "Affidavit in support of Summary Judgment as a Matter of Law" (ECF Nos. 128, 133) and Defendant Robert Wood Johnson's (hereinafter, "RWJ") Motion for Summary Judgment. (ECF No. 132). In reviewing Plaintiff's papers liberally, the Court considers Plaintiff's affidavits as a motion for summary judgment. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[1] Plaintiff claims that RWJ wrongfully refused to promote him due to his religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. For the reasons discussed herein, Plaintiff's Motion is denied, and Defendant's Motion for Summary Judgment is granted.

BACKGROUND

On July 13, 2000, Plaintiff was hired by RWJ as a Senior Central Sterile Processing ("C.S.P.") Technician and is a member of Teamsters Local 97 (hereinafter, the "Union"). (Defendant's Statement of Undisputed Material Facts ["SUMF"] at ¶ 5). Senior C.S.P.

---

[1] Plaintiff had filed complaints that did not set forth a clear and plain statement of a cause of action. The Court discusses the discernable causes of action and arguments presented in Plaintiff's motion; the other claims do not make sense and, therefore, are not addressed.

1

Technicians are responsible for, among other things, sterilizing medical instruments and disposing medical waste. (*Id.* at ¶ 13). The C.S.P. Technician position is covered by a Collective Bargaining Agreement ("CBA") between RWJ and the Union. (*Id.* at ¶ 5; ECF No 132-4 at 27-36, "CBA").

As an RWJ employee, Plaintiff attended orientation, received an employee handbook and training on the hospital's policies, including RWJ's Equal Employment Opportunity ("EEO") Policy, Seniority Policy, and the Transfers and Promotion Policy. (*Id.* at ¶¶ 6-7). RWJ's EEO Policy states, in pertinent part, that "all employment decisions, including but not limited to . . . promotions, will be made without regard to race, color, religion, [and] creed." (*Id.* at ¶ 8; ECF No. 132-4 at 38, "EEO Policy"). With regards to transfers, the Seniority Policy states, "[a]ll other things being equal, hospital seniority determines preference for a transfer." (*Id.* at ¶ 9; ECF No. 132-4 at 40, "Seniority Policy"). Most importantly, RWJ's Transfers or Promotion Policy states:

> Applications for transfer will be considered on the basis of qualification, reason for request and requirements of the department involved. Employees with less than satisfactory work, behavior issues, or disciplinary record, may be refused transfer on that basis.

(*Id.* at ¶ 10; ECF No. 132-4 at 41, "Promotion Policy").

In 2008, Plaintiff submitted paperwork with RWJ, advising it that he had changed his surname to "El Bey" and that he was declaring his affiliation with the Moorish Science Temple of America. (*Id.* at ¶ 11). RWJ abided by his request and updated its records to reflect this change. (*Id.*).

In any event, throughout his employment with RWJ, Plaintiff has demonstrated poor work ethic and has failed to meet RWJ's performance expectations. Employment Evaluations for the 2011 and 2012 work year reflect RWJ's concerns over Plaintiff's inability to receive criticism, listen, and be held accountable. (*Id.* at ¶ 17; ECF No. 132-4 at 45-51, "2011 Evaluation"; ECF No. 132-4 at 51-56, "2012 Evaluation"). RWJ's 2012 Evaluation was particularly critical of Plaintiff's

continued inability to demonstrate honesty and accountability, "[o]ur customers and other staff have not seen consistency in accountability. When challenge[d] . . . [Plaintiff] was often combative, missing opportunity to improve." (2012 Evaluation at 3). The Evaluation also noted Plaintiff's struggles with performing his job responsibilities, such as prioritizing work activities, sterilizing areas, and handling and tending to medical instruments. (*Id.* at 3).

During his tenure, from 2000 to 2017, Plaintiff received sixteen "Employee Counseling Notices," which gave written or oral warnings regarding Plaintiff's work performance. (ECF No. 132-4 at 58-89, "Employee Counseling Notices"). Specifically, Plaintiff was cited several times for incorrectly sterilizing medical instruments, leaving the instruments covered in blood and, in one instance, bone matter, and mislabeling instruments for medical procedures. (*Id.*). Plaintiff also received three disciplinary notices for: failing to properly sterilize medical equipment; mislabeling medical instruments and failing to properly prepare trays with the required equipment; and tardiness and absenteeism. (*Id.*).

This being said, in 2012, Plaintiff submitted his first application for promotion to Supervisor C.S.P., a position not covered by the CBA. (SUMF at ¶¶ 18-19). The position was ultimately given to Wayne DeCosta, another RWJ employee, who had greater seniority than Plaintiff and was considered more qualified for the role. (*Id.* at ¶¶ 20-22). At his deposition, Plaintiff conceded that RWJ's denial of his application was not discriminatory, explaining, "I didn't really have a problem with [DeCosta] getting the position because he . . . had seniority over me, which I honored." (ECF No. 132-3 at 45, "Plaintiff's Deposition" at 155:10-13). This being said, Plaintiff filed a grievance regarding the denial of his application. (SUMF at ¶ 24).

On October 18, 2012, Plaintiff attended a grievance meeting with his Union Representative, Jill Pitman; also present at the meeting were Nancy Schoolfield, C.S.P.

Department Director, and Arlene Thompson, Plaintiff's Supervisor. (*Id.* at ¶ 25). At this meeting it was explained to Plaintiff that he was not qualified for the position, since he required additional training. (*Id.*).

According to Plaintiff, around this time he was criticized by Schoolfield and Thompson for his religious beliefs and affiliation with the Moorish Temple. Specifically, Schoolfield allegedly said to Plaintiff, "You people think you're above the law." (Plaintiff's Deposition at 78:9-10). Similarly, Thompson allegedly said, "You think you are above the law. . . . We are not in Morocco. If you want to be free, go back to Morocco. . . . You Moors are trying to overthrow the government. . . . You are black just like everyone else." (*Id.* at 79:21-80:3). However, Plaintiff never reported these alleged statements with RWJ Human Resources. (SUMF at ¶ 78). Plaintiff also conceded that Schoolfield never claimed that his religious beliefs were the reason why he was not promoted. (Plaintiff's Deposition at 77:8-19).

In October 2014, Plaintiff again applied for a Supervisor position. (*Id.* at ¶ 31; ECF No. 132-4 at 128, "October 2014 Application"). After receiving his application, RWJ decided to give Plaintiff a "trial run," wherein Plaintiff would serve as Acting Supervisor C.S.P. for two weeks in November, during which his performance would be assessed. (*Id.* at ¶ 34). After completing his trial run, Plaintiff spoke with Roger Turner, who had replaced Thompson as Plaintiff's Supervisor. (*Id.* at ¶¶ 33, 35). Turner explained to Plaintiff that he needed additional training to address his interpersonal skills; he also acknowledged that there was some "political stuff" going on at RWJ, mainly that new staffing decisions were being made. (*Id.* at ¶ 35).

During this timeframe, RWJ was going through a change in C.S.P. Directorship. Then-Acting C.S.P. Director, Katherine Johnston, would be leaving her position later that year and would be replaced by Anita Cassell, who was hired on November 14, 2014. (*Id.* at ¶¶ 33, 36-37).

4

Cassell considered Plaintiff's Supervisor application, observed his performance, interviewed his supervisors, and reviewed his employment file. (*Id.* at ¶ 39). Based on her review, Cassell concluded that Plaintiff was not fit for the Supervisor position, citing, among other things, his prior performance issues and inability to hold himself accountable. (*Id.* at ¶ 40). This sentiment was also shared by Johnston, who, in a December 4, 2014 email, identified several issues with Plaintiff's qualifications. Specifically, Johnston noted that Plaintiff: (1) lacked interpersonal skills; (2) failed to schedule staffing lunches, causing most staff to leave at the same time; (3) is often the first to leave work and leaves his shift early, with no supervisor present; (4) does not submit accurate shift reports; and (5) continued to improperly sterilize medical instruments and prepare medical trays. (ECF No. 132-4 at 135-36, "Johnston Email").

In December 2014, Plaintiff recorded a conversation between him and Johnston, regarding his Supervisor application. (ECF No. 132-4 at 143-46, "December 2014 Conversation"). In this conversation, Johnston notified Plaintiff that another individual had been hired for the Supervisor position. (*Id.* at 3:2). When asked why he did not receive the promotion, Johnston explained, "[y]ou still were not taking full ownership of the shift and assignment." (*Id.* at 3:4-5). She also noted that Plaintiff continued to exhibit poor work performance. (*Id.* at 3:7-17). In response, Plaintiff told Johnston that he intended to file a grievance. (*Id.* at 3:21-23).

On December 9, 2014, Pitman wrote to RWJ, regarding denial of Plaintiff's application. (ECF No. 132-4 at 148, "December 2014 Letter"). In this letter, Pitman claims, "[Plaintiff] told me that he was promised a promotion by his supervisor. This never came to fruition and was offered to someone else." (*Id.*). She also claimed that "it was agreed that [Plaintiff] would receive specialized training so he would be eligible for the next promotion." (*Id.*). A formal grievance was

filed three days later, December 12, 2014. (ECF No. 132-4 at 150, "Grievance Form"). The grievance alleges:

> [Plaintiff] [was] continually passed over for promotion despite being senior most employee applied for job.
>
> [Plaintiff] was previously passed over again – leading to a training period which never happened. He feels this is discrimination.

(*Id.*).

A grievance meeting was held on January 28, 2015, which was attended by Plaintiff and his Union Representative, as well as Cassell and Rosemary Bohlman, a RWJ Human Resources Manager. (SUMF at ¶ 48). Both the Union and Bohlman explained to Plaintiff that the Supervisor position is not a Union position, so the CBA does not apply. (*Id.* at ¶ 49). In addition, Cassell explained to Plaintiff that it was her decision not to promote him. (*Id.* at ¶ 38; Plaintiff's Deposition at 314:22-25). She expressed to Plaintiff many of the concerns discussed above, regarding his failure to exhibit leadership and accountability. (*Id.* at ¶¶ 50, 53). Specifically, Cassell noted that, under Plaintiff's supervision, shifts did not run smoothly and there continued to be issues with the cleanliness of medical instruments. (*Id.*). At no point did Cassell ever refer to Plaintiff's religious beliefs as a basis for denying his promotion. (Plaintiff's Deposition at 314:19-20). In fact, at deposition, Plaintiff conceded that he did not believe that Cassell even knew his religion. (*Id.*).

Since this meeting, Plaintiff has indicated that he is no longer interested in the Supervisor position and has not submitted any promotion applications since October 2014. (SUMF at ¶¶ 54-55).

This being said, Plaintiff now claims that four individuals – Henry Kathlon, Edwin Ani, Lindsay Evener, and Marge Agudelo – were promoted as Supervisor over him, based on RWJ's alleged hostility towards his faith. (*Id.* at ¶ 63; ECF No. 132-4 at 152-62, "Plaintiff's Answer to

Interrogatories"). Kathlon, who Plaintiff claims is Catholic, was promoted to Supervisor in 2010. (*Id.* at ¶ 67). According to Plaintiff, although he did not apply for the position in 2010, he should have been considered for the position, given his seniority. (Plaintiff's Deposition at 171:6-173:3). Ani, who Plaintiff also claims is Catholic, had more seniority than Plaintiff and served as a temporary Supervisor in early 2013, but was never hired as a full-time Supervisor. (*Id.* at 179:10-180:7; 219:21-220:5). Apparently, with regards to Ani, Plaintiff takes exception to the fact that he was given the opportunity to serve, albeit temporarily, as a Supervisor, during the same timeframe that he submitted his Supervisor application. (*Id.* at 186:13-23). Evener, who is also alleged to be Catholic, was promoted to Supervisor in March 2014. (SUMF at ¶ 71). According to Plaintiff, he had more seniority and experience than Evener, which he also takes issue with. (Plaintiff's Deposition at 243:15-244:25). However, Plaintiff conceded that he was never told that his religious beliefs were the reason why he did not get the promotion. (*Id.* at 243:12-17). Finally, although Plaintiff included Agudelo in his interrogatories, he admitted that he did not apply for her position and that her position had "[n]othing to do with" him. (*Id.* at 249:5-25).

On January 19, 2015, Plaintiff filed a Charge of Discrimination with the New Jersey Division on Civil Rights and Equal Employment Opportunity Commission ("EEOC") against RWJ, alleging discrimination based on religion and "political repression." (ECF No. 132-4 at 22, "Charge of Discrimination"). This charge was based on RWJ's decision not to promote Plaintiff to Supervisor in December 2014. (*Id.*). Less than a month later, February 9, 2015, the EEOC mailed a Dismissal and Notice of Rights to Plaintiff. (ECF No. 132-4 at 24, "Dismissal and Notice of Rights"). In the letter, the EEOC explained that it was closing Plaintiff's charge since, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (*Id.*).

Plaintiff's present cause of action is based on RWJ's denial of his Supervisor Applications in 2012 and 2014.

**LEGAL STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor...that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

Although pro se pleadings are "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), "a pro se plaintiff is not exempt from his burden of providing some affirmative evidence, i.e. not just mere allegations, to establish a prima facie case, and to show that there is a genuine dispute for trial." *Niblack v. Murray*, No. 12-6910, 2016 U.S. Dist. LEXIS 99325, at *7 (D.N.J. July 29, 2016) (citing *Barnett v. N.J. Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014)).

ANALYSIS

*1. Title VII Statute of Limitations*

As an initial matter, RWJ contends that only the 2014 promotion application is subject to the Court's review, since all other allegations are barred by Title VII's three hundred day time limit. The Court agrees.

It is well-settled that a plaintiff asserting claims under Title VII must first exhaust all administrative remedies, before bringing a Title VII suit. *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001); *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). In addition, a plaintiff must file his Title VII complaint with the EEOC within three hundred days after the alleged unlawful employment practice occurred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). "Strict adherence" to Title

VII's timely filing requirements "is the best guarantee of evenhanded administration of the law." *Id.* at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Here, there is no evidence that Plaintiff ever filed a complaint with the EEOC, regarding the 2012 promotion denial, nor does Plaintiff claim to have done so. As such, Plaintiff's claims are dismissed as time-barred with respect to RWJ's alleged failure to promote Plaintiff as Supervisor in 2012. Therefore, the Court limits its review to allegations arising from the 2014 promotion application, which complied with the administrative requirements of 42 U.S.C. § 2000e-5(e).

*2. 2014 Promotion Application*

Plaintiff argues that RWJ refused to promote him to Supervisor, due to his religious beliefs, contrary to Title VII. When, as here, there is no explicit discrimination alleged, generally the Court should analyze the religious discrimination claims under the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999). "[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 272 (1989) (O'Connor, J., concurring).

At step one of the *McDonnell Douglas* burden-shifting analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *see also Victor v. State*, 4 A.3d 126, 141 (N.J. 2010) ("the first step in that analysis requires plaintiff to demonstrate that he or she can meet each of the elements of the prima facie case"). Here, the plaintiff's burden is rather modest. *Id.* However, the elements of the prima facie case vary based on the form of discrimination alleged. *Id.*

At step two, if the plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Stouch v. Twp. of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009). "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). However, at this stage, the employer does not have to prove that the "articulated reason actually motivated the action;" rather, "[t]he proffered reason need only raise a genuine issue of fact as to whether the employer acted impermissibly." *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 189 (3d Cir. 2003).

Finally, at step three, if the employer articulates a non-discriminatory basis for the adverse employment action, the burden shifts back to the plaintiff "to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426. "To make a showing of pretext, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* at 427 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). As such, to survive summary judgment, the plaintiff must either "present sufficient evidence to meaningfully throw into question" the employer's proffered reasons or "come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." *Fuentes*, 32 F.3d at 765.

Against this legal framework, the Court applies the *McDonnell Douglas* burden shifting analysis to Plaintiff's religious discrimination claim.

At step one, it is Plaintiff's initial burden to establish a prima facie case of religious discrimination. "Title VII of the 1964 Civil Rights Act prohibits employers from discharging or disciplining an employee based on his or her religion." *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009). The Third Circuit recognizes two theories of religious discrimination: "disparate treatment," which is at issue here, and "failure to accommodate." *Abramson v. William Paterson College*, 260 F.3d 265, 281 (3d Cir. 2001) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996); *Mann v. Frank*, 7 F.3d 1365, 1368-70 (8th Cir. 1993)). Under the disparate treatment theory of religious discrimination, Plaintiff must establish that he: "(1) is a member of a protected class, (2) was qualified and rejected for the position she sought, and (3) nonmembers of the protected class were treated more favorably." *Id.* at 281-82 (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)).

Here, RWJ contends that Plaintiff fails to establish a prima facie religious discrimination claim, since the record demonstrates that he was not qualified for the Supervisor provision. Citing Plaintiff's numerous Employee Counseling Notices and poor employment evaluations, RWJ argues that the Plaintiff lacked the qualifications to serve as a Supervisor. As best the Court can tell, Plaintiff contends that he was entitled to the position, given his seniority and work experience. For purposes of this analysis, the record sufficiently demonstrates, at step one, that Plaintiff was not promoted due to his religious beliefs.

At step two, it is RWJ's burden to articulate a legitimate basis for denying Plaintiff's promotion application. Here, RWJ contends that Plaintiff's application was denied due to his history of poor performance, not his religious beliefs. It is well-established that poor performance

and failure to meet an employer's expectations are legitimate non-discriminatory business decisions. *Hunter v. Rowan Univ.*, 299 F. App'x 190, 195 (3d Cir. 2008). Similarly, courts have acknowledged that an employer's refusal to promote an employee, due to his or her lack of leadership and "people skills," is a legitimate nondiscriminatory reason. *See Sampath v. Concurrent Techs. Corp.*, No. 03-264, 2008 U.S. Dist. LEXIS, at *107-08 (W.D. Pa. Mar. 31, 2008) (citing *Fuentes*, 32 F.3d at 766). According to RWJ, despite numerous opportunities, Plaintiff has failed to demonstrate an ability to take accountability for his mistakes and is unable to oversee staff employees. In addition, when given the opportunity to briefly serve as Temporary Supervisor, Plaintiff exhibited a lack of interpersonal and organizational skills, and continued to fail to properly prepare and sterilize medical equipment.

Finally, at step three, the burden shifts back to Plaintiff to demonstrate that poor performance was a pretext for religious discrimination. Here, the record is bereft of any competent evidence that establishes that Plaintiff's religious beliefs were, if any, a factor in RWJ's decision to not promote him to supervisor. In fact, in his own deposition, Plaintiff conceded that Cassell, who was the individual responsible for denying his application, did even know what religion he practiced. Therefore, since no reasonable trier of fact would find that RWJ refused to promote Plaintiff due to his religious beliefs, the Court grants RWJ's Motion for Summary Judgment dismissal of the Complaint.

*3. Plaintiff's Arguments*

The crux of Plaintiff's other arguments is that RWJ's Motion for Summary Judgment should be denied since Cassell lacked personal knowledge as to whether Plaintiff was fit to be promoted as C.S.P. supervisor.

Having reviewed Cassell's deposition testimony and certification, it is clear that her statements were based on her personal knowledge of the matter, which were gained through her own personal observations, discussions with Plaintiff's co-workers and supervisors, and review of Plaintiff's employment records. This is more than sufficient to establish Cassell's personal knowledge in this case and the reasons for not promoting him to supervisor. *See, e.g., Hite v. Peters*, No. 07-4492, 2010 U.S. Dist. LEXIS 65121, at *34-35 (D.N.J. June 30, 2010) (citing *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997)).

At oral argument, Plaintiff also seemed to argue that because RWJ only provided excerpts of the deposition testimony of Cassell, its Summary Judgment motion should be denied. However, Plaintiff cites no authority or case-law to support this notion, nor has the Court's own research found any merit to this argument. The Court only adds that "[a] deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am.*, 285 F.3d 764, 776 (9th Cir. 2002) (citing Fed. R. Evid. 901(b); Fed. R. Civ. P. 56(e) & 30(f)(1)). Here, the deposition excerpts of Cassell offered by RWJ are accompanied with a cover page and the reporter's certification, which identify the document as the deposition of Anita Cassell. (ECF No 132-4 at 2, "Cassell Deposition"). In addition, there is a certification from counsel, certifying that the document "is a true and correct copy of relevant excerpts from the deposition transcript of Anita Cassell." (ECF No. 132-2, "Boshak Certification" at ¶ 5). As such, RWJ's deposition excerpts are properly authenticated consistent with Federal Rule of Evidence 901(a).

In sum, Plaintiff's arguments fail to provide any legitimate basis for denying RWJ's Motion for Summary Judgment; as such, for the reasons discussed above, RWJ's motion is granted.

## Conclusion

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 11 day of June, 2018,

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that Plaintiff's "Affidavit in support of Summary Judgment as a Matter of Law" (ECF Nos. 128, 133) is **DENIED**; and it is further

**ORDERED** that the clerk of the court is directed is to close the case.

_____
PETER G. SHERIDAN, U.S.D.J.